We'll hear argument first this morning in Case 13-1019, Mock Mining, LLC v. The Equal Employment Opportunity Commission. Mr. Goldstein. Mr. Chief Justice, may it please the Court, Title VII prohibits the EEOC from suing a private employer unless it first attempts to resolve the claim of discrimination through conciliation. We ask the Court to hold that a court may conduct a modest is to require conciliation, not to dismiss the suit with prejudice. Kennedy. At first I thought this was an Overton Park case committed by law to agency discretion, but then I couldn't find many cases in the government's brief to support that, so they have a different theory, and that's more their problem than yours. On the other hand, it seems to me, as Judge Hamilton in the Seventh Circuit said, it's hard to imagine more discretionary language than Congress used here. Shall endeavor to eliminate the unemployment practice by informal methods of conference conciliation and persuasion. It seems to me that those are very difficult words for your position. Sure. So let me, Mr. Justice Kennedy, divide that question into two parts. What's the analytical framework? Is it Overton Park? Is it an APA case? Is it an implied private right of action case, which is what Judge Hamilton thought? And then turn to the words of the statute and what it means, if we were even to concede, that these are kind of unusual words for a court to administer. So the first is the doctrinal question. The government agrees that Judge Hamilton got it wrong in putting the burden on us to prove that there was an implied private right of action. This is a precondition to suit under Title VII. Everyone agrees that there doesn't have to be a special statutory provision. We say that this is a case like St. Cyr, that it's a case in which the government has to prove, because there is compelled agency action here, the conciliation by the EEOC, that there is clear and convincing evidence that Congress intended to withdraw the ordinary presumption that there is judicial review. So then the government's view, and just to put out the third doctrinal framework, the government says, look, we think this is kind of an ordinary statutory construction case, and you should see whether it is that the three provisions of the statute on which they are relying are more consistent or less consistent with judicial review. We think that this is clearly a case. We cite Bowen, for example, in our brief. We cite a series of cases about Congress having to give very clear evidence of intent to pull the courts out of the job of reviewing the agency action. Now, to take your point that this and Judge Hamilton's point, that is, this kind of language is both deferential in that it's informal, you just have to endeavor. And this is arguably something that's a little bit unusual for courts to undertake. So, first, doctrinally, the fact that Congress has given the courts an unusual job is not an excuse or a reason for the executive branch to tell you that you cannot do the job. That would turn Chevron on its head. Remember, the principle of Chevron. Ginsburg. Well, it's kind of an odd conciliation, isn't it? This is EEOC is supposed to try to settle the matter. But there is no mutual obligation on the other side. There's no obligation at all on the part of the employer to cooperate to do anything. Yes, Justice Ginsburg. And I think this has to be a point in our favor, the fact that it is unusual. Let me tell you how unusual it is, and that is the EEOC is required to do this with respect to four different statutes. The Housing and Urban Development Department has to do it, and the Federal Election Commission has to do it. So Congress has laid this out in a series of statutes where it wanted to impose on the agency this special obligation. Even with respect to Title VII, the private employee doesn't have to conciliate. The attorney general doesn't have to conciliate. The EEOC doesn't have to conciliate if it's an urgent problem under the statute. But Congress thought, and this Court has said many times, that it was especially important that the EEOC try and resolve these cases through conciliation. And it would be passing strange to say that the entire design of the statute is that the EEOC will work this out through conciliation if it's possible. But that's the one provision of the statute that is not enforceable. But at the same time, Mr. Goldstein, and this really follows up on Justice Kennedy's question, the statute makes entirely clear that the EEOC has the prerogative to decide what kind of offer by the employer is acceptable or not. And there's nothing to suggest that the EEOC even has to be reasonable in determining what sort of offer by the employer is acceptable. Goldstein, Could I agree with the first part but not the second? Let me just take you to the statute, if I might. It's in the blue brief at page 2, and it's the block code at the bottom. And it has a timing provision that's kind of irrelevant, and then it says the following. The commission has been – this is if the commission has been able to secure from the Respondent a conciliation agreement acceptable to the commission, which is the point you just made, Your Honor. The commission may bring a civil action against any Respondent, not a government. Now, I think it's a helpful point to us that Congress has to be able to do that. Ginsburg, Let's not skip over the time provision as irrelevant so quickly, because it's a 30 days – 30 days the EEOC can sue within 30 days of the charge. Isn't that right? Goldstein, It can if it cannot reach a conciliation agreement. This Court has – Ginsburg, So Congress couldn't think that this was any kind of an onerous requirement if all they have is 30 – within 30 days they can say, okay, we told them that – what the complaint is. They didn't come up with anything, and so end of conciliation. Goldstein, Well, Justice Ginsburg, we just, I suppose, disagree about what the substance of the conciliation requirement is in that point. The EEOC concedes that it cannot file the suit within 30 days or after 30 days unless it determines that there has been a conciliation process that has failed. Now, what I think the helpful point for us is that this language acceptable to the Commission is there with respect to the substance but not the process. If you were to look at the procedural obligation, which is the one we are trying to enforce here, which it appears earlier in the page, if the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate, which is expansive language, Justice Kennedy, to be sure, any such alleged unlawful employment practice by informal methods of conference conciliation and persuasion. And our point is that Congress knew how to write into the statute something like a method of conciliation that is acceptable to the Commission. Also, to the extent this provision remains vague, and it has been enforced for us Scalia, Mr. Goldstein, if I understand your argument, you're saying that there is an obligation to conciliate, but that obligation does not have to be pursued in good faith. No, Justice Scalia. We think Scalia, this is the difference between substance and process. It is not to find a point. Let me just explain our provision, our position. That is, as Justice Kagan indicates, the EEOC can declare what the finish line is. But Congress said they're going to have to go through a process. They're going to have to run the race. That was my question. Yes. It can declare when the finish line is, but it can do that in bad faith. No. I apologize. Yes. You're saying yes, it can do that in bad faith. It can say we didn't get to the finish line if it went through the motion. And it can say that in bad faith. I don't believe that's correct, Justice Scalia. I'll give you an example of what I mean. Can I illustrate the point? Well, is it correct or not correct? It is not correct. I don't understand your argument. Let me give you an illustration of my point. And that is, let's assume that the EEOC brings a charge with respect to an individual's claim. It says to the employer, we'll conciliate this if you give us $5 million. Now, $5 million is not an amount of money that they legally could even get in the case if they litigated it to the teeth. Now, we think that that would be a not a fair application of the statute for them to say, we declared conciliation failed. So that's an illustration of the issue. I mean, we're just quibbling over, you know, how bad it is. That's right. Well, Justice Scalia, here's their view of judicial review, is that it is available, but it is limited to one thing, which is to say, did we send the employer a letter that said, give us a call? Now, our point is that that's got to be an argument in our favor, because they're conceding that Congress did contemplate some form of judicial review. But it is true that you do not, I think I'm correct in this, reach out and try to incorporate the existing law on good-faith bargaining in the labor context, or there are many contracts which have good-faith clauses, and the courts have tremendous difficulty with that. And if you had argued that, we would have said, oh, well, this is a morass. So it seems to me that that's your safest harbor. Well, Justice Ginsburg. But you've already recognized in prior exchange that this is nothing like bargaining. Bargaining is reciprocal. Both sides have a duty to bargain in good faith. Here, there is no duty at all on the part of the employer. It just says EEOC tried to conciliate. That's right. Justice Ginsburg, Justice Kennedy, we are not asking you to import the good-faith bargaining case law and regulations from the NLRA. Our point is different, and that is, it is commonplace for the courts to review this sort of thing. There are five statutes. This statute has been enforced by 40 for 40 years, and courts have looked into notions like bargaining or whether parties complied with the court's order to mediate. So this isn't notionally something that is so unusual that. Well, it's unusual enough that there's a huge split among the circuits as to how to define what they're reviewing. I can't find any consistency among more than about two of them. And so I go back to, I know you say you cited cases about the imperative of judicial review, but on the administrative level, it's after a final action, and this is not a final action. Justice Sotomayor, this is not an ABA case. Well, I agree with you, but I'm trying to find something analogous, and there isn't. But I don't know how you make something that's designated by Congress as informal into a formal proceeding. Justice Sotomayor, I think when Congress said informal methods of conference, conciliation, and persuasion, it was contrasting bringing a lawsuit. There's no indication in the statutory structure or in the legislative history that what Congress was trying to do is say to the EEOC, do whatever you like. To the contrary, the EEOC uniquely was constrained. Take the Department of Labor. Take any, almost any other enforcement. Ginsburg. But can we take this case? The EEOC did send a letter saying. Give us a call. Give us a call. And the charge here is the employer violated Title VII because he outright refused to hire women. And there's lots of evidence of that. There are no women working there. They build a new facility. They don't have a women's bathroom in it. They hire people that are recommended to them by the current employees, and the current employees are all male and recommend all men. Now, what was the EEOC to conciliate about? Wouldn't the employer have to come up and say something like, okay, we'll agree that we'll hire women? Okay. Justice Ginsburg, a couple of preliminary points. Just factually, we are talking about the difference between the company does have female employees. We're talking about in the mine, which is a serious concern under Title VII, but just to be clear. Now, in terms of the conciliation process, here are the basic things that seem they ought to be uncontroversial, and that the EEOC over the course of the past 40 years should have and could have used its rulemaking authority to make clear. So the statute requires that you are going to conference. Now, the EEOC's position is we can say, give us a call. But what ought — there ought to be a rule that says if the employer contacts you back, you are willing to conference with them. You are willing to meet and have a discussion. The statute says that you have to attempt to persuade the employer. And so that — what that should mean is simply that you're going to give the basics of the — your demand in conciliation to the employer so it can evaluate it. Justice Ginsburg, the problem is that the — Scalia, can I ask something about this? Yes. Conciliation, I thought, would be conciliation between the complaining parties and the employer. It's between — And that's wrong. It is the EEOC and the employer. Between the EEOC and the employer. Right. It is an important point. So even if the complaining party is willing to accept $500,000 rather than a million, if the EEOC says a million, the EEOC is conciliating. The EEOC says it's conciliating. Under the law, you tell me it is conciliating. Right. The EEOC's position — that is correct, yes. Full stop. And this is a problem. The EEOC has an enormous incentive, because it does bring about 130 cases a year, to pick out the cases that it wants to be very high profile. It wants to send a message to employers. Justice Ginsburg, you articulated their concern with this employer. The difficulty for them is if they conciliate, Congress required that that remain entirely confidential. And so the problem is that we have an agency that has an enormous incentive in the cases that it picks out to bypass the mandatory process that Congress imposed. Mr. Goldstein, can we talk about that confidentiality provision? Because in addition to just the enormous discretion that this statute gives to the is this thing, nothing said or done as part of these informal endeavors can be used as evidence in a subsequent proceeding. And your entire position would have all the stuff about this conciliation come in as evidence in a subsequent proceeding, which is to say come in as evidence in the litigation of the lawsuit. Okay. Just to pause briefly on the premise that there is enormous discretion, that is the premise of Chevron deference, not courts not enforcing a statute. But to turn to the confidentiality provision, remember that the EEOC. I'm just saying as a matter of fact, there is discretion in the sense that the statute clearly gives it to the EEOC to decide what's acceptable in the end. Absolutely, Justice Kagan, but that is true across a range of statutes that impose a procedural obligation. Now, confidentiality. Let's start from the point that the EEOC didn't read the statute this way until four decades after it was enacted. And there's a good reason for that. It read it our way. The reason is that when Congress enacted the statute, the reference to a subsequent proceeding in the text unquestionably was the merits of the case. Because the EEOC, there was never this fight because the EEOC didn't have that enforcement power. Kagan. But you yourself are making this part of the case. You're essentially saying that the EEOC has to come in and prove that it conciliated in good faith or whatever term you want. So it's become now, by virtue of your own argument, part of the case. And how is that to be part of the case? And how is all this to happen unless the informal, what's said and done in the informal endeavors come in? Okay. So subsequent proceeding can be read their way or it can be read as a reference to the merits. I concede it can be read their way. The question, we think, is it clear and convincing? I don't even understand that distinction. You're making it a part of the merits. Because the subsequent proceeding is not, is about the merits of the subsequent the substantive claim. Let me give you three examples where we have to be right that a collateral inquiry into the EEOC's burden or our burden is not a subsequent proceeding that's referred to in the statute that would be subject to the confidentiality proceeding. This Court held in Ford Motor Company that if an employer makes an offer of back pay to the employee, and that would include in the conciliation process, then that cuts off their right to damages. You can't do that unless you can say what happened in the conciliation process. Number two, the statute says that you can ask the judge for 60 days more of conciliation. It is implausible that a court would make that judgment without knowing whether conciliation has been going completely worthlessly. Number three, what if the employer lies to the court and says, look, we never got this conciliation letter, and the EEOC knows that it was discussed in the conciliation meeting. Could we really say that this statute bars the court from enforcing a contempt proceeding against the lawyer? The point of the statute is to make sure that what happens in the conciliation process doesn't prejudice the merits of the case. This isn't a secrecy provision. Under this provision, the employer can publish what happened in conciliation in the New York Times. Kagan. I would have thought that the point of the provision is very clear. It's the same point as anything which says when you're involved in settlement negotiations, those stay in settlement negotiations, and it's to protect the integrity of the negotiations. Well, I just gave you three examples where I think plainly it can't be read that broadly. We think it serves. You left out one person, the complainant. As I understand it, to break the confidentiality, all the participants have to agree. And the employer might agree, but the employee hasn't been heard from. This, again, I think has to be a point in our favor. Let me just take you to the statutory text involved. And that says that you have to have permission of the person's concerns. Now, the commission is not a person. Justice Ginsburg, you are right that the person's concerns under this statute are the individual complainant and the employer. Now, the complainant is not involved in this inquiry at all. It's about whether the EEOC responded to our request to meet, whether it gave us an explanation of what it is that they were demanding. How does it make any sense that Congress would have said that the choice whether the evidence comes in is to the complainant, who wasn't even involved in this part of the process? We think that our reading of the statute, which is their reading of the statute for the first four decades, is a good one. But it's not confidential in that sense, Justice Ginsburg. Remember, the employer, as I said, is free to tell CNN, the New York Times, and the Washington Post, everything that happened here. Kennedy, there aren't such courts. Every court are not. Every court. On the question of administrability, it's very frequent for an agency to come to you and say, look, this would work so much better if the courts weren't involved. We would do a great job. And for 40 years, courts have enforced this provision and have never understood before a decision in 2011, the confidentiality provision to apply this way, and the EEOC argued that we were right. There's no indication that the statute was malfunctioning in some way. We think, respectfully, that you cannot have agencies come in front of you and say, look, Congress gave us a lot of discretion. That doesn't mean we should issue regulations. They have the authority to issue procedural regulations that would elaborate on what conciliation means, what persuasion means. But they've refused to do it. And then they come to you and say, well, look, you know, it's entirely vague. Ginsburg, they consider it, and I think you can't quarrel with it, this is what Congress intended, as a highly informal proceeding. They don't want a bunch of procedural regulations. That's not quite right. Remember, they admit that there are firm requirements. They have to send a letter. They can only conciliate with respect to the claim that's in the reasonable cause determination. We think there are other very simple, modest things that the courts have had no trouble in court. Breyer. But what about that? That's what I mean. In my mind, of course, there should be judicial review. There is of everything, just about. But the issue is how much. Yes. All right. Now, what's your view on that? Because as I we just had a case where when an IRS official wants to subpoena some material, all he has to do is say it's in good faith. Ah. But there could be an unusual case where we want to get more than that affidavit. Yes. So we wrote an opinion, and probably you've read it, and we said, well, Judge, yeah, if it's unusual and you really have some thought here that the IRS is in bad faith, you can go a little further. Well, that seems to me to be the kind of thing that would apply here. Sure. And then we would say, okay, so you're perfectly satisfied. But I take it the closest to this is the Fourth, Sixth, and Tenth Circuit, a minimal showing of good faith. That's the end of it. But you're never going to say never.  Now, those court cases don't help. Well, maybe there will be agreement on that. I doubt it. The Justice Breyer, that is exactly right. We think that the agency here, if it claims the expertise and the flexibility and to know what's going on, ought to issue further elaborating regulations. But we think that minimum good faith does have some very easy, simple things to know. If I'm going to go further now, I'm doing so to try and be helpful. Here's what I have in mind, Justice Breyer. Look, if I'm going to conciliate something with you, if we're going to work it out and I get to decide, I've got to tell you the minimum of what I'll take. How is it that we're supposed to work it out? Maybe that's confidential. I don't know. Minimum good faith, hey, I have an affidavit, I'm in the agency, I sign it, we called him, he came in, we discussed the matter, I tried to persuade him, and he's not persuaded. Thank you very much. In the absence of some showing that there's something like trying to get a bribe or something, goodbye. No, Justice Breyer, that is not, I believe, that is not what those courts have in mind. So there's nothing confidential. Well, that's at the moment what I have in mind. So what is it? Now, I think your response is persuade him about what? Persuade? You tried to persuade him about what? If you didn't even make an offer, there was nothing to, what, persuade him not to commit suicide? Right. Persuade? No, we didn't persuade him about not to commit suicide. What we did is we tried to persuade him that our suggestion that you reinstate the individual, whatever it was, is a sensible way to go. Fine. And it will be good for him. But they're going to be good for the company. You understand. All right. Now you're voting for me. Mr. Goldstein, can I stop a moment? Please. If the inquiry is about what happened at the hearing. Yes. At the hearing or the conciliation? At the conciliation. I misspoke. Okay. It seems to me, though, that that may be what you're arguing now. But if we look at the record below, first you didn't want to waive confidentiality. You then put in a set of interrogatories that demands to know what the EEOC, who the EEOC contacted, how they measured their damages, and a bunch of other stuff. Still not waiving confidentiality. This new thing of yours that says if you challenge it, when I make a motion, then I can disclose it. I think what Justice Breyer is getting to is you know whether someone conciliated or not. You can say exactly what the EEOC did or didn't do or failed to do. But instead you want a whole discovery process attached to this. And that's my problem here, which is it's very simple for you to come in and say we called, we asked to meet, they wouldn't meet with us. Here are the things that we want, and I do want to talk about what's in the record and why. No, no, no, no. I don't want to know what you want. I want to know what happened, because that's the only way I can judge whether there was good faith. Because if you walked in and said, I'm not going to listen to you until you give me A, B, and C, I might say you weren't acting in good faith. Okay. Well, Justice Sotomayor, they say a court doesn't have that power. Now, with respect to what happened in this case, we, the government has put us in an unbelievable bind here, and that is we issued these interrogatories and then we attempted to explain to the Court why we thought the interrogatories were necessary in light of the conciliation process, and they threatened to sanction our counsel personally. So the record is empty for a reason that owes entirely to them. I will tell you that there are cases in which the EEOC attempts to conciliate and says, we are suing, we're going to sue you on behalf of a class of people, and we want some X amount of money, and it may be an awful lot of money. And the employer will say back, look, how many people are we talking about over what period of time? And the EEOC's interpretation of this provision is it could say, we're not going to tell you. We've just got a class of people and we want this amount of money. And interrogatories like this would be out there conceivably to illustrate to the Court that we had no way of conciliating this case. If it's going to say we're in an endeavor to work it out, you've got to tell me what you want and show you the pace of it. Sotomayor So you have all of this discovery in the conciliation process in 30 days? Clement Your Honor. Sotomayor That's basically what you want to have. Clement Your Honor, it doesn't say that Congress contemplated that conciliation could conclude within 30 days. It doesn't. Remember, this case is very old because they got this charge in 2008, and it was years later, even before they brought the case. And the case has dragged on this long because they have steadfastly refused in the face of eight courts of appeals rulings, no court ever indicating that the standard was inadministrable, no court ever finding that an employer acted in good faith, in bad faith, in raising this objection. And it has dragged on unnecessarily. We want a modest inquiry that should be administrable and that the EEOC can elaborate on in its own regulations, if I could reserve the reinder of my time. Roberts Thank you, counsel. Ms. Zaharsky. Zaharsky Mr. Chief Justice, and may it please the Court, I think the Seventh Circuit was correct when it reviewed what has been happening in the courts of appeals and concluded that, in fact, what is happening is not a modest inquiry, and it's just not one that has a basis in the text of the statute. And I think it's useful to go back to the text of the statute. Sotomayor So, pardon me. Let me just ask you a simple question. You send the letter, they call you, and you say, I don't want to talk to you. Hang up. Thirty days later, you send the letter that you send routinely that says, conciliation failed. How do they get a court to review that under your theory of the case? Because you say the only thing the court can review is whether conciliation was offered and whether it ended. So here it was offered, but we're not even talking about good faith. You just say, I'm not going to. You meaning the government. So how do you review that if you're a court? Zaharsky You don't review it. We think that this is a matter that is entrusted to the agency that is not for court review. And I think that the Court I'm sorry, continue. No, I'm sorry. Zaharsky That's okay. I think that it helps to look at the obligations that the Congress put on the commission in the statute in two parts. There's the obligation, and I'll make this brief, there's the obligations in Part B, which is the commission should endeavor to eliminate the employment discrimination. Everything is supposed to be kept confidential. We understand that. To put a good faith obligation on the commission to try to get this resolved, we don't think that it is judicially reviewable because of the language that Congress used and because, by analogy, it is the type of agency action that's committed to the agency's discretion. There's no standards. Roberts What if you have you send a letter that says a representative of this office will be in contact with you to begin the conciliation process. What if the employer says, nobody contacted me, it never happened? Can you get judicial review of that claim? Saharsky Well, the obligation of the agency is to say that it has been unable to secure a conciliation agreement acceptable to the commission. So that's why it's a question of whether the agency has the obligation to do that. Well, if it is challenged, it has to put the document into court that is the notice that it was unable to do that. Roberts And they say, here, your document is signed by, you know, John Rowe. What if they say, I'm sorry, it's just not true, he's lying. We got nothing. Nobody ever called us. Saharsky Well, if the document which says the commission was unable to secure an agreement acceptable to it. Roberts No, no, you're making it too easy on yourself. I'm talking about the document that says, we will be in contact with you, right? Saharsky Yes. Roberts And I said, nobody contacted me. Saharsky I think the answer is that it is the process by which there was an attempt at conciliation is not reviewable. We do not, we think that the agency has to do that. Roberts And in my case, judicial review of that question. Saharsky No. Roberts Nobody contacted me. They've got a letter saying they'll contact me. Nobody ever contacted me. Saharsky No, but we do not think that there are any situations in which that will arise. There are not situations in which that has arisen, and that is not the argument that's used. Roberts Well, that's just assuming you're always right. I mean, I don't understand why you can't have a court at least say, okay, there's a direct conflict. You say you're supposed to conciliate. Saharsky Right. Roberts He says it never got off the ground, and you can have. Saharsky Right. Roberts And you have to file an affidavit, and he can file an affidavit, and. Breyer You know, this is Hornbook law, I thought. You said until this point that everything is reviewable. Now, that isn't quite true, but if you want to apply for a visa at a foreign embassy abroad, at our embassy, it's not reviewable, okay? And maybe there's some military things. But even the things like the Panama Canal toll, where they said it wasn't reviewable. Davis says it should have been. And the answer to your problem is not it's not reviewable. The three cases or so where we said it was, the answer is the agency has broad discretion. And because they have such broad discretion, the court can review it, but unless it's very unusual, they have to decide for the agency. Eight circuits have roughly followed that, three more detailed than others, and I haven't found anything in your brief that says in the last 40 years the EEOC has, as a result, found its functioning seriously hampered. And so why what's, what's, that's why I'm, I'm wondering. Well, a couple of points. First of all, I'm afraid that I may have misunderstood the Chief Justice's question. If there was no attempt at conciliation at all, then, you know, these letters would not exist, and we think that that potentially would be a problem. Roberts What were you saying, if the, if the agency, the agency couldn't possibly have violated the law? They wouldn't say we've attempted to, we will contact you and then not contacted you? I agree that that would be a problem, but that is not what Petitioner is arguing for. He has not identified the case. No, it's not a question of what he's arguing for. It's a question of what you are arguing for. You are arguing that there's no judicial review full stop. And I'm trying to pose a question where it seems to me that it would be utterly unreasonable for you to say you don't get judicial review of that basic question. I am very troubled by the idea that the government can do something and we can't even look at whether they've complied with the law. I'm not terribly troubled by the idea that the scope of our judicial review is limited. And I just want you to tell me which it is. Is that there's no authority for a court to review government action alleged to be in violation of law, or is it that the scope of judicial review for various reasons is sharply circumscribed? It's the second one, and I'm sorry if I misunderstood your question earlier. The scope of judicial review depends on the condition that the court, that Congress put in for the commission to meet, and that is in subsection F-1 of this provision, which is that there has to be the commission unable to obtain an agreement acceptable to it. What Petitioner seeks judicial review of is the process behind it and puts in place these factors for reviewing the process behind it. And Justice Breyer, what's the point? Kennedy, what can you tell us about what the proper function of the court is in a case like the Chief Justice put? They said there was no attempt to conciliate, and when we attempted to conciliate, they wouldn't answer our calls. Now, it seems to me, as I read your brief, that you did indicate that there was some very bare-bones requirements that the agency had to meet and that could be reviewed. I can't find any other context where the court has essentially declined to review a statutory precondition to suit at all. Well, what we're saying, Justice Kennedy, is that if it were controverted, if the other side said that there was not conciliation at all, which is not what this side is saying, they're just saying it wasn't enough effort, but if there was none at all, that we would put in place the letters that showed that we conciliated. The agency's activities, its day-to-day workings would be entitled to a presumption of regularity, and it would take really something extraordinary to look behind that. Roberts, what's extraordinary is that counsel for the other side files an affidavit saying it never happened. I know you've got this letter, but we normally don't take the government's say-so when it comes to a dispute about whether something happened. Right. So he can say, okay, here's the affidavit, we never got it, we checked our mailroom, nothing ever came in, we checked our phone logs, nobody ever called. Right. And I'm telling you that if it were a situation of it never happened, that that could be a situation in which the court would put in place a stay to permit conciliation efforts. But that's not the argument that it was. Let's go back. In the language you quoted, the commission is unable to obtain an agreement acceptable to it. To obtain an agreement – do you acknowledge that it is obliged to try to obtain an agreement acceptable to it? Acceptable to it, yes. Yes. Now, is it possible that you are trying to obtain an agreement acceptable to you when you do not tell the other side what that might be? Well, I think that there's a real difference between the – what the EEOC is doing in its day-to-day activities and court review of the EEOC activities. The EEOC has in place procedures and it has training in order to go through all of these steps in conciliation. But what we're talking about is the problems that have been caused by this after-the-fact second-guessing. You have to make me an author. That's not – that's not difficult to find out. Did you make an author? Right. But that just leads the courts into questions about how much detail was in the offer and is it sufficient. And if the – Well, not necessarily. I mean, you can draw a line somewhere, but if the other side says the EEOC never made me an author, I had no – no notion of what I had to agree to. But that is not what's happening and that is not the argument that they're making to the Chief. So that's what – that's where we are. I'm trying to – what I'd like you to do, I'm going to get you to focus on just what you want to say. But the framework in which I'm putting it is, of course, there is review, but of course, at the same time, there is very broad discretion given to the EEOC. So courts do not intervene. Be careful. It's an unusual case. Now, that's what you want. Now, I want to know how to say that. And the case that comes to me the closest was the case that we had with the IRS, where in fact, of course, the IRS says we're in good faith and the Court says that's just fine, unless, of course, there is an unusual situation. Now, one can write those words. In that kind of opinion, I've noticed it works best if you also give an example through the use of the case. Now, that's where I am. And since I think that's what you want, something like that is what you want to argue. I'm asking you for help how to write that. Right. And what I'm saying is that there is the way not to write that is by relying on a good faith standard, because I think you have a misimpression about the courts of appeals and how it has been working in the courts of appeals, which is some of the courts have adopted a good faith standard, but they are putting very onerous requirements on the EEOC in terms of looking at. Scalia We don't have to adopt a good faith standard. We could simply say that if you are really trying to conciliate, there are a few things that you've got to do, and one of them is to make an offer. Is that difficult to figure out? There are several problems with that. The first of all is that the statute says that the process is supposed to be informal, and this is adding a level of formality to it. The second thing is the court. Kennedy We're looking for a safety net. We said, please, tell us what the minimum rule is. You don't — you have not articulated a minimum rule. All you say is, I can't think of one. And that doesn't answer Justice Breyer's question and our general question. How do you want us to write what you want to hold in this case? All I hear is no review, period, goodbye. Sotomayor Now, I don't want to hear, we sent letters. I'm positing the hypothetical. You sent letters, but when they called, you said, we're going to trial. You didn't make no discussion whatsoever. You sent the letter, they called and said, let's sit down, and you — and the government says no. Okay? Tell me how we write a decision that avoid — that addresses that kind of case. Well, we do think that the decision that the Court should write should focus on what the obligation is that's on the EEOC, the particular text that Congress enacted. And the obligation that's on the EEOC is that before it can sue, it has to have been unable to secure from the Respondent a conciliation agreement acceptable to the commission. So if that's not the obligation, it's not the decision. Fine. And what is the Court supposed to do to determine whether that obligation is met? So far, I think your answer is nothing. I think what the Court's supposed to do is, if it's controverted, look at the letters  I mean, there was a yearlong process. Just trust you. The other side is challenging with whatever evidence it has. Maybe it's voluminous, affidavits, records, and you say trust us, here's a letter saying we did it. That's the end of the case. There are significant incentives that operate on agencies even when there's not judicial review. In this case, for example, the EEOC has substantial resources that don't allow it to sue. But there are incentives on other people to tell the truth most of the time. But that doesn't mean that's the end of it. There's also review by the President and by Congress, congressional committees. There are actually reports that are required every year to Congress and the Senate itself. I don't even agree with you about the incentives. I think the other side points out there is considerable incentive on the EEOC to fail in conciliation so that it can bring a big deal lawsuit and get a lot of press and put a lot of pressure on this employer and on other employers. There are real incentives to have conciliation fail. I don't think that that's true in most cases. And even in high-profile cases where the EEOC may believe that there's a very serious substantial claim of employment discrimination, it is always easier to come to an agreement than to have to go through the burdens of litigation. The EEOC finds reasonable cause in approximately 3,500 charges every year. It only has the resources to litigate in about 130 of them. That's as of 2014. Sotomayor, I know what your position is, but assume ours is. Just a hypothetical. It doesn't mean you've lost. But ours is that we have to give some teeth to judicial review greater than what you're suggesting. Justice Kennedy asked you once. I'm asking you or I asked you once before. He's asked again and I'm asking again. Right. And that's the reason. Give us what you don't want. Right. Give us a way to write it that gives you the least intrusion, but more than what you want to do. Yes. And to be frank, the reason that this is a struggle is because the courts of appeals, even those that have tried to put a minimal good-faith standard in place, have seen these standards spiral out of control and lead to significant collateral litigation. So I don't mean I understand the effort that you're looking for, Justice Sotomayor, and I will do my best to provide that guidance. But I'm telling you that even in the three circuits that have tried to use a minimal good-faith standard, they have been scrutinizing everything that the EEOC has been doing, all of the letters back and forth. You've gotten to situations where you're even deposing EEOC investigators in district courts. And that's one thing that, if I could just back up, because I think this is a really important point, is that there are four various serious problems that this has led to in the district courts and in the courts of appeals. We're talking about mini-trials on a collateral issue that's not the merits of the discrimination, but on this question of whether the EEOC tried hard enough. And it is not the case that the EEOC is failing to conciliate. The EEOC is attempting conciliation in these cases. Petitioner can't identify cases in which it has not conciliated at all. What they are saying is that we didn't try hard enough, and that requires these mini-trials. The second very serious problem with all the standards the courts of appeals have adopted is that they have to make up standards that are, appear nowhere in the statute, and they have struggled. These five guidelines that Petitioner now proposes appeared for the first time in their Supreme Court brief. These are not the standards they were urging to the district court, and they're not the standards they have put forth. Breyer. I think that that is a good analogy because the court recognized that it would not be appropriate to second-guess. Breyer. So can we copy that, you know, just copy that, making appropriate changes and say, look, Judge, you have to see, do you have your affidavit? As long as you think that affidavit, really with the bottom line, we did conciliate it, unless you have good reason for thinking it isn't so, that's the end of it, unless there is evidence of an abusive process that will allow you to go further because conciliation, mediation, is really a matter that Congress intended to leave up to the agency. And even what sounds minimal, minimal, at least the agency has to make an offer. Maybe they don't. Maybe the best way to conciliate is you sit there and say, well, you know, that can be in some circumstance. So you – what about something – is that not possible? Yes. I take your point, Justice Breyer. I think there are some modifications that I would make to it. But I think at the end of your question, you actually raise a really important ancillary point, which is that the process of trying to come to a negotiation and conclusion with someone often requires an element of strategy that you might wait for them to make the first offer, or you might find someone who says, we're never going to come to an agreement on this. And that's happened in some cases, and yet those folks still come into court and say the EEOC didn't try hard enough. Well, you told us you were never going to come to an agreement. Ginsburg. What has been going on, in fact, in these cases now, with some courts having just general good faith, others having a three-factor test? You raised the problem here that the EEOC was hit with a bunch of interrogatories. Has that been going on? Yes. The EEOC is really faced between – you know, is really between a rock and a hard place. It does its best to conciliate, and it never knows whether some court is going to find it to be insufficient later. The EEOC is attempting to maintain the confidentiality of these proceedings. When employers are in conciliation, of course they want it to be confidential. But then when this gets to court, they say, oh, we don't care about confidentiality anymore, let's all put it before the court. But the problem is that that has effects for later cases. Once employers know and the commission knows that this is all going to come out and what Petitioner proposes, it really destroys the conciliation process. It's a really a petrified case. Scalia. Did you disagree that they can publish it in the New York Times if they want? Well, partially. The confidentiality provision has two portions to it. The first says that the EEOC can't make public what happened. Right. And so that does not apply to employers. Right. But the second part says that it can't be used as evidence in a corporate case. As evidence in court. And it does apply. That's not publishing it in the New York Times, is it? Right. But I think in most of these cases the employers have not wanted this information while they've been in conciliation to become public, because they would find it public. Well, that undercuts your own argument. I mean, you're worrying about their publishing it, and then you say they have no interest or no incentive to publish it. But if they want it published, they can publish it in the New York Times. They don't have to bring a lawsuit to do it. Right. But what they can't do is use the evidence in court. And we think that when you look at the statute and the text that Congress enacted, it reflects a recognition that what Congress was defining, an informal endeavor to settle a case, is the kind of thing that shouldn't be public and that shouldn't be the subject of court proceedings. Didn't say that. They didn't say that it shouldn't be public. They said it shouldn't be used in court proceedings. That's quite different from saying it shouldn't be public. Fine. And I'll focus on the fact that the court said it shouldn't be public. So why do you say the opposite? I'm sorry. I spoke with a shorthand that it can't be made public by the commission. But you're right. It also can't be used in court proceedings. And that's really a bar on the type of far-reaching judicial review that is sought in this case. I mean, Petitioner's view essentially destroys the benefits of informal settlement processes, because the benefits of them are that they can be informal, that they can be cheap, that they can be quick, and that they stay confidential. Now, nothing's going to stay confidential. Employers don't have an incentive to conciliate, and that courts have to expend this massive effort on something, and I think this is an important point, that's really ancillary to the main event. What the statute is about, Title VII, is eliminating employment discrimination, and it has a number of steps that the agency goes through in order to get that to happen. Well, I can't. You said a moment ago that employers have no incentive to conciliate. Why is that? I think that when employers know that they have a potential defense that would get the lawsuit dismissed on the merits, they start to treat the conciliation as an opportunity for the agency to do that. You're kind of assuming bad faith on their part. I'm not assuming that. We're supposed to assume complete good faith on the government's part and bad faith on the employer's part. That's not true. I direct the Court to footnote 13 in our brief, which is where lawyers for these employers are directing them to treat the conciliation effort as one to set up a defense for trial. So I'm not suggesting that there's just necessarily bad faith. What I'm saying to the Court is that this is happening. The result of what has happened in the courts of appeals trying to come up with these standards is that there's been a real problem with folks not using conciliation to try to come to an agreement. The manipulation by employers, that was footnote 13 of our brief. There's also a large number of cases that show how often this is being raised and the kind of ‑‑ that's in another footnote, the kind of real resource. This stuff is in footnotes. What? All this stuff is in footnotes. That's where all the important stuff is. So it's a rule of SG brief writing, right? Well, you would know. Exactly. It does ‑‑ I mean, here are two preconditions to endeavoring to conciliate a claim, right? One is we actually told them what we were objecting to, and the second is we talked. So could we just have the EEOC come in with an affidavit saying we told them what we were objecting to and we talked, and it didn't work? Yes. Although, for your second point, just to ‑‑ not to be too picky about it, but sometimes these communications happen over letter and e-mail, so it might not be talked. Okay. Talked or wrote. Communicated. Communicated. Right. I also would want to point out to the Court, though, in terms of the notice of what the ‑‑ But you would not object to that. Is that right? Well, not that the EEOC would have to ‑‑ couldn't produce that kind of information. The problem is really the looking behind it and the fact that it was the inaugural information. So this goes back to the Chief Justice's first question. To the extent that somebody comes in and says either they never told me what this case was about, that is, they never told me what the claim was, or they never communicated with me, that that would be a fair thing to review. But doesn't get into your sort of spiraling out of control what, you know, how hard did you try and what positions did you take. Right. But just we told them what the claim is and we talked about the claim. Right. And two points to make about that. The first is, I think there is a concern about the spiraling out of control. You didn't tell us enough. That's essentially what Petitioner is saying in this case. We want more information, we want more information, et cetera. So I put that on the table. But the second point, and this goes to the first thing you suggested, is that the Commission is required to make a reasonable cause determination, and that does provide notice to the employer about what has been found through the investigation. So in this case, it said we have determined that there is reasonable cause to support that in your mining facilities you have failed to hire a class of women for mining jobs, and that's what the problem was. So I think to some extent what you're saying in terms of identifying the problem already happens through the reasonable cause determination. And one point, if I could, I would just like to make sure that the Court gets, is in terms of the real problems with trying to come up with a standard and the problems that the courts of appeals have seen. I mentioned the many trials that are collateral to the main event, the fact that the Court has to make up standards. You know, I can see the difficulties of making up standards just from our discussion today. But then there's also needing to jury rig the confidentiality provisions. They do say not to use in court, and that's what Petitioner is talking about, is really a full court review of everything said and done during conciliation. And if the Court has any doubt about what that is, I would point the Court to the footnotes again in the discussion in our brief that talks about even when a court said it's just good faith review, those courts disagreed about what does that mean and what do we have to do, et cetera, et cetera. And if the Court today announced five factors or something like that, the Court would no doubt be faced with future cases about what does this factor mean and what does this factor mean and whatever else. That's, I mean, aside from the fact that the standard is completely made up. And then the Court can't do that. Scalia, I think you're over-stuffed. I mean, you want to be exempt from any litigation over whether a particular standard has been met or not? That's extraordinary. That does not exist in this world. What I think is extraordinary, Justice Scalia, is reading something into a statute that doesn't exist, which is there are no standards in the statute. That's fine. If you don't like that, if you're worried, number one, this Court could set forth standards, one, two, three, four, five. You have to do this, this, this, this, and this. I would prefer not to do that. And if you leave it to the lower courts to do it, each lower court is going to have a different set of things. But the remedy for that is at your hands. As the other side said, you could issue rules which say this is an informal process, but what it consists of is, number one, we give you notice of what the offense is. We sit down with you to discuss settlement of that. Number three, we make apparent to you what our offer is for settling the matter, and whatever other rudiments of conciliation the agency believes in. What's wrong with that? Well, the agency has not done that because it needs flexibility in these processes and because it doesn't believe that this is judicially reviewable. I think the idea about putting regulations in place assumes that there's going to be a fee. Scalia, so if we tell you it's judicially reviewable, suppose we just decide it's judicially reviewable and remand for the agency to issue rules? Yes, then the agency would do that, but the agency has not done it up to this point because what it does instead of setting out regulations, because it doesn't believe that this gives a private right to employers to enforce, is it has its own training procedures about good ways to do conciliation. Breyer, I'm not a conciliator or a mediator, but those I know who are might be able to create such rules. On the other hand, they might not. It might be that conciliation is a process that, in part, is intuitive. So to require the agency to set forth rules of consideration is to invite judicial review of compliance with those rules. That is, I think, your point, and I don't think it's a minor point. I think it's rather important if the conciliation process is actually to work, let it go. I think you're right that to a significant extent, the conciliation is more an art than a science. It depends on the facts of the case and it depends on the relationship with an employer. If the employer said we're never going to come to an agreement, that would change how much information the conciliation, how far along the conciliation might go or how many offers the commission might make. But I thought Justice Breyer said you have to make the phone call if your letter says it's going to make the phone call. I thought Justice Breyer believed that there are some rudiments. We're just talking about what the rudiments are. I mean, they're called conciliation. What are the three words? Conciliate, conference, conciliation, and persuasion. And I think it's helpful to focus back on that language that Congress put in place, because we think that it did not intend and did not show any intention to put any kind of specific requirements like that on the commission. It said endeavor to eliminate the employment discrimination. Roberts, what is it, in terms of additional saying, yes, we called them, how can you conciliate, this question's been asked, I don't know that I've gotten an answer, without telling them what you want? I want, we think there's a class, we think it's this many, we think their damages claims are, you know, 15 million. What do you think about that? You don't have to, then that's the end of it. You don't have to say we'll take 10 or anything else. They need to know at least what you want. Well, two thoughts about that, three thoughts. First, the reasonable cause determination gives them notice about what the discrimination alleged discrimination is. Two, the commission does, as a general rule, provide this information about what it is interested in getting. Third, though, there are tactics and conciliations where one side might wait for the other side to make an offer, et cetera, et cetera, and it's really that kind of second guessing that we think is a serious problem. One thing that I think is useful is to step back and look at what would happen under our view of the world as opposed to Petitioner's view of the world. Under our view of the world, we believe that the EEOC is conciliating and has significant incentives to conciliate. But if we're wrong about that, the worst case is a trial about the employment discrimination on the merits, that we actually move on to the main event and answer the question, which is that the EEOC has been investigating was there discrimination here. And we typically see that as a good thing in American society, but what is the downside of Petitioner's position is really this long, mini-trials that are collateral to the merits that happen to have to happen and are happening in a majority of cases. They take up significant court resources, and they're not supposed to happen because of the confidentiality requirement. Roberts.  Congress wanted you to try to conciliate. Yes. So to say that it's a good thing to get to the merits, it seems to me, is not doesn't take account of what Congress said, which is before you go to the merits, try to conciliate. What I'm trying to say, Mr. Chief Justice, is that the point of Title VII is to stop employment discrimination. And that's what we're trying to do. And so getting to the main event, which is has there been employment discrimination as opposed to giving employers this private right that Congress never intended, we do think is a good thing. We think that this has gone too far in the courts of appeals. It's not what Congress intended. It's led to significant consequences for the courts and for the agency. And it's hurting conciliation. Kennedy, one more time, I think there's substantial merit to your position that the courts have gone too far. But you have given us no midway, no alternative, other than to say no judicial review, and I think that's a serious, a serious suggestion to make. I think that there are some options that Justice Kagan laid out, along with Justice Breyer, in terms of some minimal requirements for the agency. But the point that I would just like to make clear to the Court is that they're nothing like what's happening in the court of appeals, and some of those courts of appeals started the same place where some members of the Court are today, which just, which is let's just ask for a minimal level of good-faith review, and it is nonetheless the case that it is devolved into really searching review that can't be justified on the statute's text. Thank you. Roberts. Thank you, Ms. Saharsky. Mr. Goldstein, you have four minutes remaining. Thank you. I'm going to work on the assumption that the Court is going to find that there needs to be some judicial review. Then the Court's going to face the following question. Should it announce the rudiments, or should it simply reverse the court of appeals, because all the court of appeals said is that there's no judicial review after the letter. The ordinary practice of the Court would be to decide what the court of appeals did, and you've been assured by the agency that if you do do that, the agency will promulgate the rudiments, and so there's a good reason to do that. But you have been interested in what the rudiments would be, here's what they are, they are taken directly from the cases and from the statute. The first obligation is to conference. We think the rudiment of conference is you tell the employer, get in touch, if you want to conciliate, the employer says, I want to talk, you are willing to talk. If it's by letter, if it's by phone, if it's in person, that's the rudiment of conferencing. Conciliation. If we are going to endeavor to resolve this by conciliation, I have to tell you what the minimum will be. The reasonable cause determination doesn't say that. It says we're going to sue you. It doesn't say what it would take to resolve the case. So I've got to tell you what it would be at a minimum. And that has to be ---- Kagan, but do you want them to put their minimum offer on the table, that's a necessary part of conciliation? Justice Kagan, not their minimum. The following, and that is, if I'm the employer and I say I want to talk, here's my offer. The EEOC can't steadfastly refuse to say what would be an acceptable conciliation. Their absolute last best offer, if that's their position, then they have no intention to conciliate. That's just good-faith bargaining. Then all you're doing is referring us to a body of law in both labor and contracts for good-faith bargaining. And that is a morass. Justice Kennedy, I'm giving some ---- a few basic things. I will say about that, that that is the statutory scheme that Congress enacted in the NLRA, and the board has issued regulations about it. Yeah, but we just started with the tremendous difference, a mutual obligation to bargain, and the subjects of bargaining well know. You can bargain about wages, you can bargain about hours, about working conditions. This is quite different. Justice Ginsburg, could I just briefly get out the rudiments, because I think there has been significant interest in that. The offer that they say what would be acceptable to us has to be something they could legally get. That is to say, it's a claim that's in the reasonable cause determination and it's something that they could get in court. And persuasion is just to provide the basics of where that comes from. You can't expect the employer or the employer's insurer to say, okay, I'll give you a million dollars, if the EEOC won't even say where the basics of where the million dollars came from. That is to say, we've got about 20 employees, we think that their damages are roughly $50,000. This is not an intrusive inquiry into the details. It's not just intrusive. I mean, you're doing your best job of proving Ms. Zaharsky's point here, because you're saying they have to put all the reasons on the table, they have to say why it is that they're asking for what it is that they're asking for, they have to say, you know, what they would be, the only, the last thing that they would find acceptable. Justice Kagan, I'm sorry. In the context just of where we're not supposed to look at any of that stuff at all. We disagree with that, obviously, Mr. Chief Justice. I am trying to illustrate for the Court that despite the rhetoric of the EEOC, this is a statute that has been administered for four decades. Do you have any other rudiments because you're running out of time? No, I do not have any other rudiments. I am, I am, those are all my rudiments. But I think the better course here is they say they have training and guidelines. They say they know how to do this. But the game here is for them to say, but we don't want to be behind you. Sotomayor, shouldn't the game be on you? They come in and say, we conciliated. Shouldn't you have to waive confidentiality and set forth circumstances? I'm going back to Justice Breyer's point about the IRS case, because there we required the parties saying that something was in bad faith or didn't happen to set forth the circumstances. Yes, yes, yes. All right? But you didn't do that here. Well, Justice Sotomayor, what happened is we've stated in affirmative defense and they moved to dismiss as a matter of law on the ground that the statute was unenforceable. The case never went anywhere. We never have an opportunity to do any of those things. We think that there is a presumption of regularity, but it's called the presumption of regularity because then you can disprove it. We don't assume that agencies follow the law. We don't have a – administrative law gets upended. If you announce a rule that says this is a broad statute that gives a lot of – the agency a lot of flexibility, we won't enforce it. Thank you, counsel. The case is submitted.